UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

Raymond R Hamilton

_____
(Name of plaintiff or plaintiffs)

v.    CIVIL ACTION NO._____

Union Steel Workers Un__

_____
(Name of defendant or defendants)

RECEIVED DEC -8 PM [stamp]

**COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff, Raymond R Hamilton
   (name of plaintiff)

is a citizen of the United States and resides at  885 Lee Rd
                                                  (street address)

Byhalia            USA              MS
(city)            (country)         (state)

38611                           901-383-3117
(zip code)                      (telephone number)

                                662-838-2398

Revised 4-18-08

3. Defendant __Union Steel Worker Union__
(defendant's name)

lives at, or its business is located at _____
(street address)

_____

_____

4. Plaintiff sought employment from the defendant or was employed by the defendant at __1684 Nonconnah Blvd Suite 111__
(street address)
__Memphis__   __USA__   __TN__   __38132__
(city)   (country)   (state)   (zip code)

5. Defendant discriminated against plaintiff in the manner indicated in paragraph 9 of this complaint on or about __11__   __10__   __11__
(day)   (month)   (year)

6. Defendant filed charges against the defendant with the Tennessee Fair Employment Commission charging defendant with the acts of discrimination indicated in paragraph 9 of this complaint on or about __9__   __11__   __11__.
(day)   (month)   (year)

7. Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging defendant with the acts of discrimination indicated in paragraph 9 of this complaint on or about __7__   __11__   __11__.
(day)   (month)   (year)

8. The Equal Employment Opportunity Commission issued a Notice of Right to Sue, which was received by plaintiff on _____. (Attach a copy of the notice to
(day) (month) (year)
this complaint.)

9. Because of plaintiff's (1) ___ race, (2) ___ color, (3) _X_ sex, (4) ___ religion, (5) ___ national origin, defendant

    (a) ___ failed to employ plaintiff.

    (b) _X_ terminated plaintiff's employment.

    (c) ___ failed to promote plaintiff.

    (d) __Sexual orientation and gender__

_____

_____

Revised 4-18-08

10. The circumstances under which defendant discriminated against plaintiff were as follows: _When a lawsuit rep by the name of Cecile Ponel was on a piece of paper_ _that_ _[illegible handwritten text]_ _See Attachment_

11. The acts set forth in paragraph 9 of this complaint

   (a) ____ are still being committed by defendant.

   (b) _X_ are no longer being committed by defendant.

   (c) ____ may still be being committed by defendant.

12. Please attach to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission, which are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, Plaintiff prays that the Court grant the following relief to the plaintiff:

   (a) ____ Defendant be directed to employ plaintiff, or

   (b) _X_ Defendant be directed to re-employ plaintiff, or

   (c) ____ Defendant be directed to promote plaintiff, or;

   (d) _X_ Defendant be directed to _Compensation and punitive damages_

and that the Court grant such other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

13. I would like to have my case tried by a jury. Yes ( ) No (X)

SIGNATURE OF PLAINTIFF

Revised 4-18-08

# Statement for Flight 4303

Around about 2:55 we started to board flight 4303 from Memphis, Tennessee to Birmingham, Alabama. As I was boarding flight 4303, to Birmingham, Alabama. I notices as I was boarding that three passengers had ask could they sit in the front seat. I told the passengers that they needed to sit in their assign seat for weight and balance purposes. I noticed after couple of minutes telling these passengers this. I noticed a passenger in the back putting her stuff away that came all the way back up to the front and sat in row 1 and in seated 1C, and before she did this, she stood in the aisle just looking at me. I didn't know why and I never said anything an kept on boarding and greeting passengers and when she did this it slow up other from getting on that was coming on behind her. I ask her could I see her ticket and she show it to me at that time. I told her that her seat was 1B instead of 1C. She said, she knew and her respond was that she was waiting on a friend.

I said nothing after the responds to her reason for seating in 1C. After making the 10 minute prior announcement, an doing my walk through the cabin, confirming my number count with the customers service agent and my captain, I ask my captain was he ready to close the main cabin door. Captain Mark Gagliano told me yes you can close the main cabin door.

Upon closing the main cabin door, I make the announcement for the main cabin door closure, I noticed while closing the door that someone was standing up crossing over to

told me at that time do you know who I am. I told her no, and I also say to her that its my job to keep you and all the rest of the passengers safe until we have reach our final destination. At this time passenger 1B is breaking regulation stated in the flight attendant manual that clearly states, people or passenger who are unruly, disorderly and obnoxious can be denied boarding (Pinnacle Airlines, Inc. FAM p. 10-32). I also told her you know that you have to follow rule and regulation like everyone else when flighting as a non-revenue passenger on any aircraft. Flight Attendant Manual clearly states, that non-revenue passenger on an aircraft is subjective to this privilege and improper conduct or behavior while using this benefit can cause suspension or revocation (Pinnacle Airlines, Inc. FAM p.10-14).After telling her this, she just kept on mouthing off about you just the flight attendant like I was nobody to her, I told her after she finished talk that it is my responsible to let you know that our company could be fine when breaking FAA regulation if you are up and out of your seat after the main cabin door has been shut. So after telling her this the flight from that point on was fine.

Upon our arrive into Birmingham, AL, she was the last passenger to get off the aircraft. While I was standing in the galley facing the main cabin door, she walk pass me about to enter into my flight deck. I put my arm across the entrance between pa system and the galley. She look at me and went to jumping and caring on talking about I want to see the captain, and I want to see him now. I am an executive. I literally had to grab her by her arm before entering into the flight deck and told her that she can not enter the flight deck without proper notification first of all and without being announce by me the flight attendant no matter who she is. I walk up to the front where my captain was an said that a

passenger want to see him. Captain Mark told me to tell her that he would talk to her on the jet way bridge. Before exiting the aircraft, my captain said Raymond what is the problem with her and I told him that she didn't want to follow safety rules and regulation on the aircraft after tell her repeatly on following them. After telling him this, I just notices that passenger 1B and the captain was outside on the jet bridge talking, but I didn't know what about because I stay on the plane the whole time. After my captain finish talking with her and others, he told me that the 1B passengers said that I was talking to myself while I was working and going in and out the restroom. This same responds came from my Assist Base Manager Robert Johnson as well as in responds to this question, I told my captain as well as my assist base manager that sometime I do count out to myself to make sure my number are right when I am doing my passenger count but that all. The responds to going in and out the restroom is I do a walk through every 10 minute to monitor the cabin to check to see if anyone needs anything and to always check the restroom during every walk through.

Assist base manager also said that they thought that I was acting like I was drinking in my respond to that was I was just excite about this trip because it's very rare that I get chance to go to New York City. It is the only place I like to layover at beside Fort Lauderdale on the CRJ 200, and I was also excited about the long layover as well as the trip because I was flighting with one of my favorite outstanding leadership captain at pinnacle, as well but far as drinking. I have never drunk any type of alcoholic beverage in my life, so I don't know what they were talking about. My captain said that after she call VPSOC that she try to have me remove from the aircraft in Birmingham and he told

them that as PIC of this crew I feel that my flight attendant is capable of perform his job and if you want to remove him please wait until we get to Detroit.

After enter into Detroit, I notice two guys checking me out from distance for alcohol and they said it nothing. The Base Manager in Detroit and another woman by the name of Nina came out to the aircraft and told me that the flight that I was on will be reassign and we went to Nina office, me and the base manager. I notices that Nina was watching me as well as the base manager was an Nina said you are not drunk and it isn't anything wrong with you and void the drug test.

Also, when I got back into Memphis and talk with my assist base manager about these allegation. He also told me that you did what you suppose to do as a flight attendant and that was my job and thank me for doing my job an maintaining a professional standard throughout the incident during the whole process and that me as well as your other assist base manager Dena Moore and your base manager Mary Smith will kept you inform of the incident allegation that was given to us on the meeting of these allegation.

I would also like to give awesome leadership CRM to my crew as well as to my captain for being an excellent leader within his position and he told me that Raymond I love how you perform, you do your job well, and I love flying with you. I trust this captain and this entire crew with the safety of my life as well as my passengers on any plane that I am flying.

## Corporate Headquarter Meeting on Flight 4303

During the meeting, which was scheduled sometime in November of 2010 I think? I was called in for a second meeting over at the corporate office or headquarter. To explain, the allegation that had happen on flight 4303 for Memphis, TN to Birmingham, AL. The following people who were present were the Human Resource Representative Chris Jones, Base Manager Mary Smith, Assistant Base Manager Dena Moore, union representative Celica Bond and I. I gave each one of them a copy of the statement explaining the incident on flight 4303, I noticed that after given them the statement they went to asking me question like, for instance, could you have done anything different. I told them at that time no but then I said maybe I could have been a little nicer. I told them that I was firm with her because she was up and out of her seat on the CRJ 200 when I just had shut my main cabin door to the aircraft while my flight deck door was still open. That's why I ask her nicely several times to go ahead and seat down. That was before, I got firm with her.

This is when she started to mouth off at me telling me, do you know who I am. I told her no. I don't know who you are. It is my job to keep all passengers safe I noticed that she was or she told me she work for the company at that time. I told her then you know the rules better than I do, so please follow them. She would not follow FAA rules and regulation on the aircraft, but I was not rude to her. I was just firm with what I had to say.

I noticed during that time the union representative Celica Bond wrote down on a sheet of paper and held it up in the room. The message written stated they thought he was

gay. She did not verbally say it but she did write this on a piece of paper. That when Chris Jones the human resource representative stop the meeting and went over to somebody office over in corporate but just before he did. He did say that we will take a break at this time and come back later. Celica Bond, my union representative as well as my union representative, also stated outside the room everybody thinks that all male flight attendant are gay. The reason for her saying this is because she felt the meeting was not going in my favor.

    When we all came back into the meeting Celica Bond my union representative asks once again did they think he was gay. She didn't say it verbal but held up the sign once again to Chris Jones the human resource representative. He stated, all except one out of the several other passengers. After that response we closed the meeting and my base manager said that we will get back with you on the result and allegation.

    The sexual comment that was said was a unwelcome sexual questions, and I was very offended by it, because it was something that I thought would never happen to me. After a couple weeks, after this my boss calls me in an said that her boss who is Nancy told her to fire me. She asked her boss and the human resource representative what we are firing him for. Are we firing him for doing his job? No one had any respond to her question?

    On top of all that, I went to file for my unemployment and the company tried to deny it saying that I left on my own, walk off my job or was fired by upper division management. I also never received a discharge letter not until 10/26/2011 from the corporate office. They said they sent it through regular mail to me but I never received it until I went up to the corporate office to get a copy of it.

And when I was terminate from the job I was never once asked would I like a union representative or didn't have a union representative to represent me on my behalf on the last day of my employment. No one ever called to defend on my behalf either or on my final day with this corporation.

The following incident concern sexual harassment was violated when the comment, Chris Jones and Celica Bond made during the course of our meeting. This was a unwelcome and unwanted remark and question of sex-orientation. It shouldn't have anything to do with my job as a citizen of the United States which violated my equal rights as a human being. This remark was not only said once but several times throughout the meeting. Not only that, I was fired unlawfully for following FAA guides, required by Federal Government. I take pride in my job, I was clearly not in any violation.

TENNESSEE DEPARTMENT OF LABOR & WORKFORCE DEVELOPMENT
EMPLOYMENT SECURITY DIVISION
DECISION OF APPEALS TRIBUNAL

AVISO IMPORTANTE

DATE OF MAILING: 03/28/2011

DOCKET # 11-04214AA
OFFICE # 103
BYE  12/10/2011

CLAIMANT
RAYMOND R. HAMILTON
885 LEE ROAD
BYHALIA MS 38611 0000

EMPLOYER
PINNACLE AIRLINES INC
%THOMAS & THORNGREN
PO BOX 280100
NASHVILLE TN 37228-0000

SSN XXX-XX-1306
901-491-1112

ER # 0622232
615-242-8246

On December 13, 2010, the claimant filed an initial claim for unemployment benefits which was approved. On January 19, 2011, the above mentioned employer was notified of the approval of the claim and on February 2, 2011, filed an appeal against the payment of benefits to the claimant on the basis that the claimant should be disqualified for either voluntarily quitting without good cause connected to work under T.C.A. § 50-7-303(a)(1) or for being discharged for misconduct connected to work under T.C.A. § 50-7-303(a)(2). After due notice to all interested parties, a telephone hearing was scheduled on this case, on Thursday, March 17, 2011, at which time the claimant did not appear. The employer was represented by Mary Smith, In Flight Base Manager, who testified on behalf of the employer.

After carefully considering the testimony and the entire record in the case, the Appeals Tribunal makes the following:

FINDINGS OF FACT: The claimant's most recent employment prior to filing this claim was with Pinnacle Airlines as a flight attendant from January 23, 2008 until December 10, 2010 when he was discharged for his alleged rudeness to a member of upper management during one of his flights. The upper management member did not testify at the Appeal Tribunal hearing as to the incident in question. The employer representative who did appear at the hearing was only able to present hearsay evidence and testimony to support the employer's contention the claimant had been rude and disrespectful to the member of management. The representative for the employer was unable to clearly state what actions of claimant were considered rude and a violation of company policy. No other reason was presented for the employer's decision to terminate the employment of the claimant.

LB-0952

CONCLUSIONS OF LAW: The Appeals Tribunal holds that the claimant is eligible for unemployment compensation benefits. The issue in this case is whether the claimant was discharged for misconduct connected with his work, as provided in T.C.A. § 50-7-303(a)(2). Misconduct is a willful or controllable breach of a claimant's duties, responsibilities, or behavior that the employer has a right to expect. Misconduct may be an act or an omission that is deliberately or substantially negligent, which adversely affects the employer's legitimate business interests. Simple negligence without harmful intent is not misconduct, nor is inefficiency, unsatisfactory conduct that is beyond the claimant's control, or good faith error of judgment or discretion. The burden of proving misconduct rests on the employer and in this case, the employer has not met its burden of proof.

The evidence establishes that the claimant was discharged for allegedly being rude to a passenger on his flight. Because the passenger was a member of upper management, the person's complaint resulted in the claimant's discharge from the employment. The employer has failed to present detailed facts concerning claimant's actual actions sufficient to support the overturning of the Agency Decision. The only evidence presented by the employer to the Appeal Tribunal was hearsay testimony. Hearsay testimony, standing alone, in this case is not sufficient to establish misconduct. A willful or wanton violation of a duty the claimant owed to the employer has not been established. The claimant was discharged, but misconduct connected with work has not been shown under T.C.A. § 50-7-303(a)(2). The claimant therefore remains entitled to receive unemployment insurance benefits under Tennessee Employment Security law.

DECISION: The Agency Decision is affirmed. The claimant is eligible for unemployment benefits. The employer appeal is denied.

WB :mwh

/s/ William Booker
Unemployment Appeals Hearing Officer

Pursuant to the provisions of TCA § 50-7-304(c), this decision will become final on 04/12/2011 unless any interested party makes a written appeal to the Board of Review, Tenn. Dept of Labor and Workforce Development, 220 French Landing Dr., Nashville, TN 37243-1002 (Fax (615) 741-0290).
If the last day for filing falls on a weekend or holiday, the deadline extends to the next business day.
Please include the claimant's Social Security number on all correspondence.

Claimant is responsible for certifying his/her eligibility on a weekly basis as long as he/she is unemployed.

Este es un aviso importante relacionado con sus beneficios de desempleo.

LB-0952



Pinnacle Airlines, Inc.
1689 Nonconnah Blvd.
Suite 111
Memphis, TN 38132
flypinnacle.com
901.348.4100
Fax 901.348.4130

December 13, 2010

Raymond Hamilton

### NOTICE OF DISCHARGE

Dear Raymond Hamilton

This letter is a follow up to our meeting on December 1, 2010. You met with me, Dena Moore, and Chris Jones to discuss employee and passenger complaints from 11/19/10 (flight 4303 MEM-BHM). USW Union Representative, Celia Bond, was also present.

During our meeting, the complaints were presented allowing you the opportunity to respond. You were encouraged to offer any explanations or justification you felt was pertinent to the incident. You verbally responded, which included your account of the flight and pertinent Federal Regulations. We acknowledged the receipt of your written report regarding the incident as well. At the conclusion of the meeting, you were informed that someone would notify of the next meeting to discuss our decision. You were also informed that your "on-hold" status (with pay) would be continued until a decision was made regarding your status.

In determining the appropriate course of action, all of the information provided on your behalf was considered. In addition, the Last Chance Agreement Letter signed by you and a USW representative was also reviewed. According to the agreement, violations in the area of professionalism and performance could result in discipline up to and including termination.

I met you again on December 10, 2010 to discuss the decision regarding your status. The complaints violated the terms of the Last Chance Agreement Letter. Consequently, on December 10, 2010, you were notified that you were discharged as a Pinnacle Airlines, Inc. flight attendant. I obtained your SIDA badge and you company ID. You were instructed to turn in your flight attendant manual to our corporate headquarters (1689 Nonconnah Blvd., Suite 111, Memphis, TN 38132). We acknowledge receipt of your flight attendant manual on December 10, 2010.

Any further correspondence should be directed to the People Department (see corporate address above).

Sincerely,

Mary Smith
Inflight Base Manager - MEM
Pinnacle Airlines, Inc.

Cc:   USW
      Personnel File